```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY and          No. 1:22-cv-06187 (KAM(PK)
GEICO CASUALTY COMPANY,

                            Plaintiffs,

       -against-

GARY GRODY a/k/a LANCE GRODY, YURIY ZAYONTS,
IRINA ZAYONTS, LILIAN ISHVAN, AVL CAPITAL
LLC, AKIVA OFSHTEIN, LAW OFFICES OF AKIVA
OFSHTEIN, P.C., and JOHN DOE DEFENDANTS
"1" through "10,"

                            Defendants.
------------------------------------------------------------------------X
```

## **DECLARATION OF LILIA ISHVAN**

Lilia Ishvan ("Ishvan"), pursuant to 28 U.S.C. § 1746, hereby declares the truth of the following:

1. I am the owner/sole member of AVL Capital, LLC ("AVL"), a limited liability company, duly existing pursuant to, and by virtue of, the laws of the State of New Jersey, with its principal place of business at 8718 Bay Parkway, Fifth Floor, Brooklyn, New York 11214, in the County of Kings, State of New York.

2. AVL is a foreign limited liability company, registered with and authorized to do business in the State of New York. *See* Ex. A.

3. Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company ("Plaintiffs") have brought this unfounded lawsuit against me, personally, as well as against my company AVL,

offering nothing more than baseless allegations of guilt by association, and unsubstantiated and outrageous claims of conspiracies and fraud.

4.      Plaintiffs have accused AVL and me of involvement with nefarious individuals and suspicious entities we have never heard of. Plaintiffs have created a narrative in which they claim that we are an integral part of a multi-layered fraudulent scheme. Plaintiffs have advised the Court that, should our assets not be attached prior to judgment, we would abscond with all monies and properties that would be necessary to satisfy a final judgment, should one be entered against us. Plaintiffs have done all this, and more, with no proof whatsoever.

5.      AVL is a finance company. Period. We provide no medical services; we recommend no doctors or clinics; we merely offer financial services to medical practices seeking advances on reimbursements from insurance companies.

6.      Plaintiffs have made huge efforts to muddy the waters by grouping us in with "bad actors" and then expecting the Court to believe that just by virtue of knowing a guilty person, we too are guilty.

7.      If we are guilty of anything, it is of trusting the wrong people – Defendant Gary Grody a/k/a Lance Grody ("Grody") – for if, indeed, there is fraud and conspiracy in this case, it is Gary Grody who is the mastermind of such deceit; and Dr. Olubusola Brimmo ("Dr. Brimmo") – who, through his false statements in his affidavit and elsewhere, has tried to shift the blame from himself to others, namely AVL and me.

8.      My attorneys have informed me that attachment is an extreme remedy, employed sparingly by the Court as it would have devastating effects upon AVL and me. My attorneys have further informed me that Plaintiffs fall far short of the requisite criteria to support an order of attachment. Plaintiffs' hundreds of pages of what they term "exhibits" are a "document dump" on

the Court according to my counsel, and Plaintiffs expect that the Court will take Plaintiffs' words and "exhibits" as gospel.

9. The number of so called "exhibits" included by Plaintiffs is an unmanageable one and, in the short time I have had to respond to this motion, not each one could possibly have been fully investigated and vetted. Thus, my attorneys and I will show, by way of example, how Plaintiffs have tried to muddy the waters with suppositions disguised as facts and "exhibits." As stated by my attorneys, it is much too early in the litigation for such a drastic remedy as attachment, with no discovery exchanged whatsoever.

## The Complaint

10. It is respectfully submitted that there is nothing in the complaint to indicate that Plaintiffs will be successful on the merits in this matter. It is my understanding, from my attorneys, that probable success on the merits is one of the requirements for the granting of pre judgment attachment. Therefore, I would like to point out to the Court a non-exhaustive list of some the glaring false accusations in the complaint, as well as examples of the constant theme of guilt by association proffered by Plaintiffs throughout the complaint.

11. Even at very first glance, it is plain to see that Plaintiffs have not done their homework in terms of the types of services for which AVL allegedly submitted billing. *See* ECF Doc. No. 1 ¶ 1. Contrary to Plaintiffs' allegations, AVL submitted no billing whatsoever for videonystagmus ("VNG") testing or transcranial doppler testing ("TDT").

12. This baseless accusation is not surprising since, as will be shown, it is a constant tactic employed by Plaintiffs throughout the complaint and this motion to make generalizations about AVL and me, and to use those unfounded generalizations as the basis for their allegations against us.

13. Plaintiffs paint Grody out to be a manipulative fraudster. *See Id.* ¶ 5. Plaintiffs are correct. However, what Plaintiffs fail to recognize is that this convicted felon, with help from Dr. Brimmo, also manipulated AVL and me, perpetrating a fraud upon both of us as well.

14. The complaint goes on further to accuse AVL and me of concocting "a fraudulent treatment and billing scheme." *See Id.* ¶ 12. Neither I nor AVL have any knowledge of (1) services not being provided to or not being received by patients; (2) any unlicensed individuals performing services on patients; and (3) any clinics seeking payment for fraudulent services.

15. Muddying the waters with unsubstantiated claims is a constant theme throughout the complaint, as is the use of nebulous verbs to describe AVL's alleged bad acts. Plaintiffs state that "AVL *appears* to have been engaging in widespread money laundering activities for the past 5 years as part of its operations." *See Id.* ¶ 17 (emphasis added). This is absolutely false. AVL has never been involved in money laundering and, in fact, this is the first time AVL has ever even been accused of such.

16. Further, I have no familiarity with an individual by the name of Alla Kuratova, yet Plaintiffs nonetheless accuse AVL and me of wrongdoing in connection with Ms. Kuratova's alleged check cashing activities at Cambridge Clarendon. *See Id.* AVL issues checks. They do not cash them.

17. As previously stated, AVL is a finance company. Period. Neither AVL nor I are in partnership with Grody, Dr. Brimmo or any of their illegal entities or criminal associates. We are not part of any grand scheme to defraud. Paragraph after paragraph of the entire complaint is filled with such false allegations. Cited are just several additional examples, but the false, unsubstantiated allegations are a constant throughout the entirety of the complaint. *See Id.* ¶¶ 18-32.

**Dr. Olubusola Brimmo**

18. Plaintiffs rely almost exclusively on Dr. Olubusola Brimmo's ("Dr. Brimmo") testimony in support of their motion for pre judgment attachment. As can be seen from the attached exhibits listed *infra*, Dr. Brimmo's credibility is totally lacking in that, contrary to the doctor's contentions, Dr. Brimmo not only knew me, knew my company, and knew Akiva Ofshtein, Esq. ("Ofshtein"), but he also entered into signed agreements with both AVL and Ofshtein.

19. On March 15, 2022, Dr. Brimmo and Grody came to my office. I introduced myself as Lilia Ishvan, the owner of AVL.

20. In preparation for this meeting, I requested that notary Eugene Kazakevich ("Kazakevich") be present for any signing of documents, and that Naadira Kavis ("Kavis") from the office also be present at the meeting to help with copies and any other information Dr. Brimmo might otherwise request to see.

21. The first question Dr. Brimmo asked was for confirmation of the procedures that were being billed under his name. He wanted to see a sample bill.

22. Kavis showed him the bill, which he examined and approved, stating that this was the procedure he was aware of and had previously approved.

23. Dr. Brimmo then took out a copy of another bill that he had with him. It had a different TID than the one we had been using for billing. Dr. Brimmo stated that although the TID we had been using belonged to him, he wanted us to use a different TID than the one that was given to us.

24. It was my understanding that Dr. Brimmo already knew this as he was prepared with a pre-typed paper to give to us. He handed the paper to Kavis, with instructions to resubmit

all bills under the TID he brought with him. Kavis left the conference room with the paper to give it to Kesiya Joseph ("Joseph") to start the process.

25. As stated by Joseph, in her affidavit: "[On March 15, 2022] Naadira Kavis, another employee of Akiva Ofshtein PC, came out of the conference room and provided me with a medical bill with instructions from Dr. Brimmo to resubmit all his bills previously submitted under TIN: 87-2976377 and to instead submit these bills under the corrected TID: 88-070223. *See* Ex. B.

26. Of particular note is Exhibit A of Joseph's affidavit, which contains a signed and notarized statement by Dr. Brimmo with specific instructions to insurance carriers to update their records with this new TID.

27. Dr. Brimmo was obviously aware of the billing that had been done on his behalf since he was giving instructions to the insurance carriers regarding his claims.

28. Further, as stated by Kazakevich in his affidavit, Dr. Brimmo appeared nervous at the March 15, 2022 meeting and "was talking about some documents which he had received from Travelers Insurance Company and asked who the billers were for Esther Aronova. Esq. and Dennis Karsunsky, Esq. because, according to Dr. Brimmo, some procedures for which he is not qualified (i.e., TCD) were billed under his name." *See* Ex. C.

29. I "responded that [I] had never met either Esther Aronova. Esq. or Dennis Karsunsky, Esq. and that [I] had no idea about the services to which Dr. Brimmo was referring. *See Id.*

30. It was then that "Dr. Grody told Dr. Brimmo that these two attorneys were from different law firms and that he would set up meetings with them afterward." *See Id.*

31. It is patently clear that both Grody and Dr. Brimmo were involved with many other individuals and entities beside AVL and me, yet Plaintiffs, in their efforts to tie my hands and turn

Page **6** of **9**

my business upside down, have lumped AVL and me together with those other individuals and entities – all nefarious, bad actors – accomplices of Grody and Dr. Brimmo.

32. In fact, the instant matter is not the only case in which Dr. Brimmo has been involved. Dr. Brimmo was a co-defendant in *State Farm Mutual Automobile Ins. Co. v. Germain, et al.,* Index No. 606724/2022, filed in New York State Supreme Court, County of Nassau, on May 23, 2022. *See* Ex. D. In that case, Dr. Brimmo was accused of involvement in fraudulent no-fault claims. Sound familiar?

33. Clearly, Dr. Brimmo is not the helpless, hapless, innocent individual he and Plaintiffs claim he is.

34. A further example of Dr. Brimmo's dishonesty is his assertion that he neither knew nor signed any documents involving AVL, Ofshtein, or me. These assertions appear throughout Dr. Brimmo's affidavit. *See* Hirsig Decl. Ex. 2.

35. Yet, as can be seen from the Letter of Representation signed by Dr. Brimmo, and notarized on February 3, 2022, Dr. Brimmo indeed acknowledged that he was represented by Ofshtein. *See* Ex. E.

36. Additionally, as can be seen from the Closing Letter Acknowledgement Batch 1 signed by Dr. Brimmo and notarized on February 3, 2022, Brimmo agreed and acknowledged his distribution directive with AVL. *See* Ex. F.

37. It is obvious that Grody and Dr. Brimmo, working together, schemed against and defrauded AVL and me, leaving us as innocent victims fighting for our livelihood.

### **The Tax Liens**

38. Not surprisingly, Plaintiffs try to again mislead the Court and infer wrongdoing on the part of Defendants, where none exists, when the Declaration of Kelly Hirsig claims that:

> Notably, [the tax liens] were not paid by Ishvan and released by the IRS until May 11, 2022 and August 2, 2022 respectively. These payments were made: (i) after the insurance payments on the fraudulent claims were paid over to AVL by the Lawyer Defendants on the Brimmo LLC claims, and importantly, (ii) the first payment on May 11, 2022 was three (3) days after our counsel met with the Funding Defendants and their then counsel, Mark Furman, Esq. at our counsel's office in Long Island made them aware of GEICO's intention to assert a claim for financial recovery against them and the Lawyer Defendants.

*See* Hirsig Decl. ¶ 21.

39. These claims are also included and used as arguments against AVL and me in Plaintiffs' memo of law. *See* Plaintiffs' MOL at 17-18

40. However, these claims are absolutely false! Neither I nor AVL ever paid off the referenced tax liens. Attached are copies of two Notices of Federal Tax Lien and two Certificates of Release of Federal Tax Lien, obtained via the website for the County Clerk of Middlesex County in the State of New Jersey (https://mcrecords.co.middlesex.nj.us/publicsearch1/). *See* Ex. G.

41. As can be seen, both these liens have been "released" but there is nothing in any of these documents that shows the liens were paid by AVL or me. It was the government that made the decision to release the liens, due to an accounting error, not as a result of any payment whatsoever by AVL or me.

42. It is obvious that Plaintiffs jumped to the wrong conclusion here and would have the Court do the same. In fact, Plaintiffs submitted exhibit after exhibit without fully vetting them all, and thus likely came to the wrong conclusion on many of them.

43. It is patently unfair for AVL and me to be subject to pre judgment attachment based upon unproven allegations and misleading exhibits. I respectfully submit to the Court that it should see through this slight of hand trickery on the part of Plaintiffs, and deny their motion in its entirety.

## Conclusion

44. As the Court can see, Plaintiffs have come forward with no proof whatsoever of any wrongdoing on my part or that of AVL. The Court can also see that Plaintiffs have not done their homework when it comes to reviewing exhibits they expect the Court to rely upon. I have included signed documents from Dr. Brimmo which show that, contrary to the doctor's statements and the assertions of Plaintiffs, Dr. Brimmo was well aware that both AVL and Ofshtein were working on his behalf. I have also debunked Plaintiffs' claims that I paid off IRS liens in anticipation of a possible judgment against AVL and me. The lists goes on, but at this early stage of litigation it is impossible to go through every single document. That is why it is imperative to have a trial on the merits before judgment is rendered. It is respectfully submitted that Plaintiffs fall well short of the threshold for an order of pre judgment attachment.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Las Vegas, Nevada on January 20, 2023.

_____
LILIA ISHVAN