UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ x
GOVERNMENT EMPLOYEES                   :
INSURANCE COMPANY,                     :
GEICO INDEMNITY COMPANY,               :     REPORT AND
GEICO GENERAL INSURANCE                :     RECOMMENDATION
COMPANY, and GEICO CASUALTY            :
COMPANY,                               :     22-CV-06187 (KAM) (PK)
                                       :
                   Plaintiffs,         :
                                       :
             -against-                 :
                                       :
GARY GRODY aka LANCE GRODY,            :
YURIY ZAYONTS, IRINA ZAYONTS,          :
LILIAN ISHVAN, AVL CAPITAL             :
LLC, AKIVA OFSHTEIN, LAW               :
OFFICES OF AKIVA OFSHTEIN, P.C.,       :
And JOHN DOE DEFENDANTS                :
1 THROUGH 10,                          :
                                       :
                   Defendants.         :
------------------------------------------------------------ X
```

**Peggy Kuo, United States Magistrate Judge:**

Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO" or "Plaintiffs") brought this action against Gary Grody ("Grody"), Yuriy Zayonts ("Y. Zayonts"), Irina Zayonts ("I. Zayonts"), Lilian Ishvan[1] ("Ishvan"), AVL Capital LLC ("AVL"), Akiva Ofshtein ("Ofshtein"), Law Offices of Akiva Ofshtein, P.C. ("Ofshtein P.C."), and John Doe Defendants 1 through 10 (collectively, "Defendants"), alleging common law fraud, unjust enrichment, aiding and abetting fraud, conspiracy to commit fraud, and negligent misrepresentation. (*See* Compl., Dkt. 1.)

---

[1] Although the case caption states that Ishvan's name is "Lilian Ishvan," Ishvan's submissions in relation to this Report and Recommendation state that her name is "Lilia Ishvan." (*See, e.g.,* Declaration of Lilia Ishvan, Dkt. 38-1; Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Pre-Judgment Attachment of the Property of Defendants AVL Capital LLC and Lilia Ishvan, Dkt. 38-9.)

1

Plaintiffs now seek prejudgment attachment of the property of Defendants Ishvan and AVL up to the amount of $576,040.41 and an order directing Ishvan and AVL to disclose any property owned and any debts owed. ("Motion," Dkt. 37.) The Honorable Kiyo A. Matsumoto referred the Motion to the undersigned for a report and recommendation. For the foregoing reasons, I respectfully recommend that the Motion be granted in part and denied in part.

## **BACKGROUND**

Plaintiffs commenced this action on October 13, 2022, alleging that AVL and Ishvan, in concert with other Defendants, participated in a scheme to fraudulently bill GEICO for unnecessary medical treatments performed by unlicensed technicians on no-fault automobile accident victims. (Compl. ¶¶ 1, 12(i)-(iii).) Plaintiffs allege that Defendants lured Missouri-based physician Olubusola Brimmo ("Brimmo") into the scheme by offering him a job as a supervisory physician, then used his name, the tax identification number of his limited liability company ("LLC"), medical license, and signature to bill services without his knowledge or permission. (*Id.* ¶¶ 2, 13-14.)

To effectuate the scheme, Plaintiffs allege that Defendant Grody placed an online advertisement for a supervisory physician role in late December 2021. (Compl. ¶ 67.) Brimmo responded to the advertisement, accepted the job, and provided Grody with his bank account information, a W-9 form containing Brimmo's signature and the tax identification number of Brimmo's LLC, and a copy of his medical license. (*Id.* ¶ 70.) In discussions with Grody, Brimmo was told that on February 11, 2022, technicians would begin the services he was hired to supervise. (*Id.* ¶ 76.) However, Plaintiffs allege that, without Brimmo's knowledge, Defendants began submitting bills to GEICO prior to February 11, 2022 using Brimmo's name, medical license, tax identification number, and signature for fraudulent services allegedly provided by unlicensed technicians at clinics associated with Defendants I. Zayonts and Y. Zayonts. (*Id.* ¶¶ 12, 78, 87(i)-(ii).) The submitted bills list dates of service as early as December 15, 2021, which was twelve days prior to Brimmo's first

2

contact with Grody, and include what Plaintiffs allege is an improbable 630 instances of treatment at 48 locations, including up to 16 different location on the same day, between December 15, 2021 and February 25, 2022. (*Id.* ¶¶ 87(i)-(ii), 112.)

Ishvan and AVL, the billing company of which Ishvan is the sole member, are alleged to have participated in the scheme by receiving and issuing payments related to the fraudulent billing. (Compl. ¶¶ 16-18.) GEICO alleges that Ishvan and AVL laundered the funds flowing between Defendants in order to obscure the illegal arrangements used to treat no-fault patients and bill GEICO. (*Id.* ¶ 19.) Ishvan is also office manager for Defendant Ofshtein P.C., and Plaintiffs allege that Ishvan, AVL, Ofshtein, and Ofshtein P.C. operated in tandem to receive fabricated insurance claims documents, submit bills to GEICO along with false letters of representation, and issue financial "advances" to entities belonging to Defendants Grody, I. Zayonts, and Y. Zayonts from the Ofshtein P.C. IOLA accounts. (*Id.* ¶¶ 22, 24-28; Declaration of Kelly Hirsig ("Hirsig Decl.") ¶ 17, Dkt. 37-3; *see* Email dated Jan. 4, 2021, Ex. 4 to the Hirsig Decl., Dkt. 37-7 (requesting documents "in order for us to fund your cases," and signed by "Lilia Ishvan, Office Manager, Akiva Ofshtein, P.C.").)

Plaintiffs allege that Defendants, including Ishvan and AVL, were aware that they were misappropriating Brimmo's personal identifying information without his knowledge or consent, that Brimmo had not provided or supervised any of the services, and that Brimmo was never paid any money collected from GEICO. (Compl. ¶ 29.) Plaintiffs also allege that Brimmo did not know of the existence of Ishvan or AVL and was not aware of any purported agreement between his LLC, Ofshtein and Ofshtein P.C., and AVL to bill GEICO and transfer funds. (Hirsig Decl. ¶ 15.)

Plaintiff brings claims against Ishvan and AVL for common law fraud (Compl. ¶¶ 164-170), unjust enrichment *(Id.* ¶¶ 171-176), and conspiracy to commit fraud *(Id.* ¶¶ 185-191), but not for aiding and abetting fraud or negligent misrepresentation (which are only brought against Ofshtein and Ofshtein P.C.) *(Id.* ¶¶ 177-184, 192-202).

Plaintiffs now move for (1) an order directing prejudgment attachment of the property of Defendants Ishvan and AVL up to $576,040.41, the amount Plaintiffs allege GEICO paid as a result of bills submitted by Ishvan, AVL, Ofshtein, and Ofshtein P.C., and (2) an order directing Ishvan and AVL to "disclose the identity of all real property, bank accounts, brokerage accounts, accounts receivable, cash, stocks, bonds, motor vehicles, and boats in which they have any interest, as well as any debts owed to [Ishvan and AVL] by any party." (Motion at 1-2; Plaintiffs' Memorandum of Law in Support of Their Motion for Pre-Judgment Attachment of Property of Defendants AVL Capital, LLC and Lilia Ishvan ("Pl. Mem.") at 1 n.1, Dkt. 37-2.) Ishvan and AVL oppose the Motion. (*See* Declaration of Lilia Ishvan ("Ishvan Decl."), Dkt. 38-1[2]; Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Pre-Judgment Attachment of the Property of Defendants AVL Capital LLC and Lilia Ishvan ("Opp. Mem."); Dkt. 38-9.)

## DISCUSSION

### I.   Standard for Prejudgment Writ of Attachment

Absent an applicable federal statute, Rule 64 of the Federal Rules of Civil Procedure permits the use of every remedy available under state law that "provides for seizing a person or property to secure satisfaction of the potential judgment." To obtain prejudgment attachment under New York law, Plaintiffs must show that (1) there is a cause of action for money judgment, (2) it is probable that the claim will succeed on the merits, (3) grounds for attachment under CPLR § 6201 exist, and (4) the amount demanded exceeds all counterclaims known to Plaintiffs. NY CPLR § 6212(a); *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318-19 (E.D.N.Y. 2009).

---

[2] The Ishvan Declaration purports to be made "under penalty of perjury," but is not signed or executed. (*See* Ishvan Decl. at 9 (ECF pagination).)

The party moving for attachment bears the burden of demonstrating that the four requirements for attachment are met. *Nat'l Audubon Soc., Inc. v. Sonopia Corp.*, No. 09 CIV. 975 (PGG), 2009 WL 636952, at *2 (S.D.N.Y. Mar. 6, 2009).

"[B]efore granting an attachment for security purposes, 'New York courts ... require[ ] an additional showing that something, whether it is a defendant's financial position or past and present conduct, poses a real risk of the enforcement of a future judgment.'" *Plaintiff Funding Holding, Inc. v. Carrera*, No. 17-CV-257 (ARR)(ST), 2017 WL 7411183, at *3 (E.D.N.Y. Feb. 6, 2017) (quoting *Bank of China, New York Branch v. NBM L.L.C.*, 192 F. Supp. 2d 183, 188 (S.D.N.Y. 2002)). A party may make the required showing by demonstrating that a defendant "lack[s] sufficient assets, or that they will choose to hide or otherwise dispose of their assets." *Id.* (citing *VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 967 N.Y.S.2d 338, 347 (2013)).

Although prejudgment attachment is a discretionary remedy, "[w]here. . .a statutory ground for attachment exists and both need and likelihood of success are established, [the Court's] discretion does not permit denial of the remedy for some other reason, at least absent extraordinary circumstances and perhaps even then." *Cap. Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 222 (2d Cir. 2006).

## II. Application of Standard

### A. *Existence of a Cause of Action and No Counterclaims*

Plaintiffs assert claims for money damages, including common law fraud and unjust enrichment (Compl. ¶¶ 164-202), and Ishvan and AVL do not assert any counterclaims in this action. Accordingly, the first and fourth requirements for prejudgment attachment are met.

### B. *Probability of Success on the Merits*

"To show a probability of success on the merits, the moving party must demonstrate by affidavit that it is more likely than not that it will succeed on its claims." *DLJ Mortg. Cap., Inc.*, 594 F. Supp. 2d at 319.

In order to succeed on a claim of common law fraud, a plaintiff must demonstrate that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995).

Plaintiffs have sufficiently demonstrated that it is more likely than not that Ishvan and AVL made a material false representation by billing fabricated insurance claims to GEICO for services claimed to have been provided by Brimmo and by representing to GEICO that Brimmo had authorized such billing on his behalf. Brimmo states that on December 27, 2021 he responded to a job posting by Grody, accepted a supervisory physician position, and provided personal information, including a signed W-9 form, bank account information, and a copy of his medical license (Affidavit of Olubusola Brimmo ("First Brimmo Aff."), Ex. 2 to the Hirsig Decl. ¶¶ 8-9, Dkt. 37-5; Hirsig Decl. ¶ 11.) After accepting the job, Brimmo was informed that the technicians he agreed to supervise would not start providing services until February 11, 2022. (First Brimmo Aff. ¶ 10.) Brimmo also stated that he did not supervise or perform any services and did not authorize Ofshtein, Ofshtein P.C., Ishvan, or AVL to prepare bills or assignment of benefits forms using his name. (*Id.* ¶¶ 6, 30.)

Although Brimmo did not authorize them to do so, Ishvan and AVL, together with Ofshtein and Ofshtein P.C., submitted bills to Plaintiffs using Brimmo's name and tax identification number for extracorporeal shockwave therapy. (Hirsig Decl. ¶ 10.) Some of the claims predate Brimmo's hiring and February 11, 2022 start date. For example, claims with service dates prior to December 27,

6

2021 in the amount of $83,000.00 were submitted to GEICO.  (Hirsig Decl. ¶ 11; Brimmo Aff. ¶¶ 4, 6; *see* Verifications of Treatment by Attending Physician or Other Provider of Health Service, Ex. 8 to the Hirsig Decl., Dkt. 37-11.)  The claims submissions included Assignment of Benefits Forms allegedly signed by Brimmo and letters from Ofshtein P.C. claiming that Brimmo had retained the firm to process insurance payments.  (New York Motor Vehicle No-Fault Insurance Law Assignment of Benefits Forms ("Assignment of Benefit Forms"), Ex. 9 to the Hirsig Decl., Dkt. 37-12; Letters from the Law Office of Akiva Ofshtein, P.C., Ex. 10 to the Hirsig Decl., Dkt. 37-13.)

Ishvan and AVL claim that Brimmo signed agreements authorizing them and Ofshtein P.C. to submit claims on his behalf and that there was, therefore, no false representation to GEICO about their authorization to conduct billing.  Ishvan asserts that on March 16, 2022, in the presence of a notary and Ofshtein P.C. employees at the Ofshtein P.C. office, Brimmo met with her and signed a document authorizing Ofshtein P.C. to submit bills under a particular taxpayer identification number. (Ishvan Decl. ¶¶ 19-26: Affidavit of Kesiya Joseph, Ex. B to the Ishvan Decl., Dkt. 38-3 (stating that, as an employee of Ofshtein P.C., she was asked submit bills for Brimmo under a corrected identification number); Letter Requesting Change to Tax ID ("Tax ID Letter"), Ex. A to the Affidavit of Kesiya Joseph, Dkt. 38-3 at 3 (ECF pagination).)

Ishvan also submitted a Letter of Representation, stating that Ofshtein P.C. represented Brimmo's LLC in medical billing matters, and a "Closing Letter Acknowledgement Batch 1," purporting to acknowledge that AVL had advanced funds to "TM Equites [sic], Inc [and] VASOL, INC" on behalf of Brimmo.  (Ishvan Decl. ¶¶ 34-36; Letter of Representation, Ex. E to the Ishvan Decl., Dkt. 38-6; Closing Letter Acknowledgement Batch 1 ("Closing Letter"), Ex. F to the Ishvan Decl., Dkt. 38-7.)  The Letter of Representation and Closing Letter were allegedly signed by Brimmo on February 3, 2022.  (*Id.*)

7

Brimmo has stated under oath that he did not sign the Tax ID Letter, Letter of Representation, or Closing Letter, but rather, that his signatures were forged using a stamped or duplicated copy of his real signature. (Second Affidavit of Olubusola Brimmo ("Second Brimmo Aff."), Ex. 1 to Plaintiffs' Reply Memorandum ("Pl. Reply") ¶¶ 4, 7-8, Dkt. 40-2.) Close inspection of Brimmo's signatures on these three documents reveals that they are uncannily identical, varying only in size, but with the exact same letter shape and ink pressure, including the same stippling effect created by lifting the pen at the end of the signature in the exact same way. I agree with Plaintiffs that Brimmo's signature on these three documents appears to be a duplicate of a single signature rather than unique handwritten signatures. Plaintiffs suggest that this signature was duplicated from one provided to Defendant Grody on January 18, 2022. (Pl. Reply at 6 fn.2, Dkt. 40-1; *see* Electronic Signature, Ex. 1 to the First Brimmo Aff. At 17 (ECF pagination), Dkt. 37-5.) The signatures also appear identical to those affixed to the Assignment of Benefits Forms submitted to GEICO. (*See* Assignment of Benefits Forms.)

These three documents purport to have been signed by Brimmo before a notary in Brooklyn. However, Brimmo stated in his affidavit that he was in Missouri on those dates. In support of his presence outside of New York on March 16, 2022, he submitted an airline confirmation showing that he was scheduled to depart New York on March 15, 2022 at 8:51 p.m. and arrive in Kansas City at 11:15 pm. Thus, it was highly unlikely that Brimmo returned to New York to sign the Tax ID Letter the next day. (Second Brimmo Aff. ¶¶ 4-8; Flight Confirmation, Ex. 1 to the Second Brimmo Aff. at 6 (ECF pagination), Dkt. 40-2). The Closing Letter also incorrectly states, without correction, the name of the signer as "Brimmo Olubusola," reversing the first and last names.

The same notary, Nadezhda Ozerskaya, notarized all three documents and submitted an affidavit stating that she "reviewed a copy of a document on which my Notary stamp and signature are affixed," that the signature and stamp appear to be hers, and that she verifies the identity of the

8

signer whenever she notarizes a document. ((Affidavit of Nadezhda Ozerskaya ("Ozerskaya Aff."), ¶¶ 6-7, 9, Dkt. 58-1.) However, she conceded that she did not maintain a notary log and "do[es] not have a specific recollection of [n]otarizing this document." *(Id.* ¶¶ 5, 8.) She does not specify which document she reviewed. Neither Ishvan nor AVL submitted a sworn statement denying the forgery, explaining the identical signatures, or explaining how Brimmo was able to sign the documents on dates when he was in Missouri.

Plaintiffs provided unsigned copies of two forms that Brimmo was asked, but declined, to sign: an "Attorney Escrow Agreement" authorizing Ofshtein P.C. to act as an escrow agent, and an affidavit stating, *inter alia*, that Brimmo had entered into funding agreements with AVL and that AVL and Ishvan did not own or control his practice. (Brimmo Aff. ¶ 25; *see* Attorney Escrow Agreement and Affidavit, Ex. 3 to the First Brimmo Decl. at 23 (ECF pagination), Dkt. 37-5.) Ishvan and AVL do not dispute that Brimmo was asked to sign these forms or that he refused to do so. (*Id.*; *see also* Affidavit of Eugene Kazakevich, Ex. C to the Ishvan Decl. ¶ 9; Dkt. 38-4.)

Based on Brimmo's statements that he did not supervise services on the dates claimed and did not authorize Ishvan, AVL, Ofshtein, or Ofshtein P.C. to bill insurance claims for him, and because the only documentation of purported agreements between Brimmo, AVL, and Ofshtein P.C. appears to be forged, I find it more likely than not that Ishvan and AVL made material false representations to Plaintiffs in their billing submissions claiming to represent Brimmo and seeking payments for services rendered.

Plaintiffs have also demonstrated that it is more likely than not that Ishvan and AVL made these representations with intent to defraud Plaintiffs. Shortly before Grody posted the job listing to which Brimmo responded, Defendant I. Zayonts sent an email to Grody stating that "we need a new doctor for [extracorporeal shockwave therapy]…I sent out 300 files yesterday, can't fund, unless we change a doctor" and requesting a "w9, driver license, voided check." (Email from Irina Zayonts

dated Dec. 8, 2021, Ex. 7 to the Hirsig Decl., Dkt. 37-10.) After acquiring Brimmo's personal information, AVL and Ofshtein P.C. submitted claims to GEICO in Brimmo's name and then issued a series of batched payments to LYZ Services, Inc., an entity owned by Y. Zayonts and his brother Leonid Zayonts, with the name "Brimmo" in the memo line. (Hirsig Decl. ¶ 17; Log of Transactions Between AVL Capital, LLC and LYZ Services, Inc., Ex. 13 to the Hirsig Decl., Dkt. 37-16; Business Signature Card of LYZ Services, Inc., Ex. 14 to the Hirsig Decl., Dkt. 37-17; Checks issued by Akiva Ofshtein, P.C. to LYZ Services, Inc. Ex. 15 to the Hirsig Decl., Dkt. 37-18.) Ishvan and AVL do not explain the purpose of these payments or why they were issued to an entity owned by Y. Zayonts rather than directly to Brimmo.

The evidence presented shows that Ishvan and AVL, together with other Defendants, sought out and used Brimmo's information to bill for services, including "300 files" that were ready even before Brimmo contacted Grody in response to the online advertisement. They created documents that would cause GEICO to believe that Brimmo had authorized them to submit claims and remit payments, which then entered a stream of funds distributed to co-defendants. I, therefore, find that AVL and Ishvan more likely than not intended to defraud Plaintiffs by using Brimmo's identity to bill and collect payments for the services.

GEICO issued payments in the total amount of $576,040.41 based on claims submissions made by Ishvan, AVL, Ofshtein, and Ofshtein P.C. (Hirsig Decl. ¶ 13.) These payments were deposited into the Ofshtein P.C. IOLA account. (*Id.* ¶ 14.) I thus find it more likely than not that Plaintiffs reasonably relied on the claims submissions, causing them to issue payments for services for which they were not obligated to pay, and suffered damages as a result.

Ishvan and AVL argue that they, like Brimmo, are victims of a fraudulent scheme perpetrated by Grody. (Ishvan Decl. ¶¶ 7, 13.) They deny any participation in money laundering or knowledge of medical treatments by unlicensed technicians or clinics seeking payment for fraudulent services (*Id.*

10

¶¶ 14-15), and suggest that Brimmo himself is untrustworthy because he was named as a defendant in a New York State Supreme Court case relating to fraudulent no-fault insurance claims. (*Id.* ¶ 32.) Ishvan and AVL have not, however, submitted any communications or agreements with Brimmo except the three documents that appear to contain his forged signature; nor have they explained the complicated funding arrangements or transfers to other Defendants in relation to Brimmo.

I conclude that it is more likely than not that Ishvan and AVL committed common law fraud by submitting and receiving payments for claims to GEICO made on behalf of Brimmo without his consent or knowledge

Because I find it more likely than not that Ishvan and AVL committed common law fraud, it is unnecessary to determine whether Plaintiffs are likely to succeed on the merits on their claim of unjust enrichment.

### C. *Grounds for Attachment Under CPLR § 6201*

As grounds for attachment, Plaintiffs cite CPLR § 6201(1), which states that "[a]n order of attachment may be granted in any action where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when. . . the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." NY CPLR § 6201(1).[3]

This requirement is met as to Ishvan, since she is a nondomiciliary who resides in New Jersey. (Hirsig Decl. ¶ 8.)

AVL is a foreign corporation registered in New Jersey. (*See* Hirsig Decl. ¶ 7; New Jersey Business Gateway Business Entity Information and Records Service for AVL Capital LLC, Ex. 3 to the Hirsig Decl., Dkt. 37-6.) At the time Plaintiffs served the Motion on AVL and Ishvan,[4] AVL was

---

[3] Plaintiffs do not seek attachment on the grounds provided for in CPLR § 6201(2) or (3). (Pl. Reply at 4.)

[4] The Motion was not filed on the docket until it was fully briefed.

not registered to do business in New York; however, AVL subsequently registered with the New York Department of State on January 13, 2023 and has designated an agent within the state. (Ishvan Decl. ¶ 2; Department of State Division of Corporations Entity Information for AVL Capital LLC, Ex. A to the Ishvan Decl., Dkt. 38-2.) Plaintiffs cite *Marklin v. Drew Properties Corp.*, 280 F. Supp. 176 (S.D.N.Y. 1967) and *Prentiss v. Greene*, 184 N.Y.S. 558 (App. Div. 1920) for the proposition that status as a foreign company is sufficient to establish grounds for prejudgment attachment, regardless of whether that company is authorized to transact business in New York. (Pl. Reply at 3.) These cases, however, predate the 1977 amendment to CPLR § 6201 which added the requirement that a foreign corporation must also not be qualified to do business in the state. *See Elton Leather Corp. v. First Gen. Res. Co.*, 138 A.D.2d 132, 135 (1988). Plaintiffs suggest that AVL's registration to do business in New York State is a "façade" because AVL actually operates out of New Jersey. (Pl. Reply at 3.) However, CPLR § 6201(1) only requires that a foreign corporation be qualified to do business within the state; it need not actually operate from within the state.

Because AVL is qualified to do business within New York, there is no ground for attachment under NY CPLR § 6201(1). *See Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 332 (2d Cir. 1983) (holding that defendant foreign entity's filing of registration to do business in New York after the order of attachment was issued, but prior to its confirmation, served to void the order of attachment); *c.f. Giorgio Morandi, Inc. v. Texport Corp.*, 697 F. Supp. 777, 778 (S.D.N.Y. 1988) (disagreeing with *Brastex* based on later state court developments and declining to vacate an order of attachment where defendant entity applied for authorization to do business in New York only after the order was signed and issued). Here, AVL applied for and received authorization to do business in New York before any order of attachment was entered.

Because Plaintiffs do not assert any other grounds for attachment under NY CPLR § 6201, they have not met the third requirement for prejudgment attachment as to AVL.

12

### D. *Risk of Enforcement of Future Judgment*

Plaintiffs argue that there is a real risk of enforcement to a future judgment because Ishvan and AVL are in a "tenuous financial position" and because their past and present actions suggest that they will hide assets to avoid paying a future judgment. (Motion at 13-19.) Plaintiffs note that Brimmo has waived and released all outstanding insurance claims for services alleged to have been rendered by Brimmo or his LLC. (Hirsig Decl. ¶ 24; *see* General Release, Ex. 29 to the Hirsig Decl., Dkt. 37-32.) AVL and Ishvan are, therefore, unable to collect on any pending or additional payments sought on Brimmo's behalf.

A search run by Plaintiffs indicated that AVL does not have any personal or real property, while Ishvan owns one condominium and one townhome in New Jersey, each of which is encumbered by a mortgage. (Hirsig Decl. ¶ 19; Condominium Deed, Ex. 16 to the Hirsig Decl., Dkt. 37-19; Condominum Mortgage, Ex. 17 to the Hirsig Decl., Dkt. 37-20; Townhome Deed, Ex. 18 to the Hirsig Decl., Dkt. 37-21; Townhome Mortgage, Ex. 19 to the Hirsig Decl., Dkt. 37-22.)

On May 11, 2022 and August 2, 2022, Ishvan paid federal tax liens recorded against her properties. (First Notice of Federal Tax Lien, Ex. 20 to the Hirsig Decl, Dkt. 37-23; Second Notice of Federal Tax Lien, Ex. 21 to the Hirsig Decl, Dkt. 37-24.) Plaintiffs note that although these tax liens were assessed in 2018 and 2019, respectively, they were only paid after Ishvan and AVL began participating in the alleged fraudulent scheme and that the May 11, 2022 payment was made three days after a meeting between Plaintiffs' counsel and Ishvan and AVL's then-counsel to discuss Plaintiffs' intent to assert claims against them. (Hirsig Decl. ¶ 21.) Plaintiffs argue that this demonstrates Ishvan's willingness to move assets in order to protect them from judgment.

Ishvan claims that the federal tax liens were released because of an "accounting error." (Ishvan Decl. ¶ 41.) However, she provides no proof of any accounting error; the submitted documents

13

merely show that the liens were released. (Notices of Federal Tax Liens and Certificates of Release of Federal Tax Liens, Ex. G to the Ishvan Decl., Dkt. 38-8.)

Plaintiffs have demonstrated that AVL and Ishvan have limited assets and may have lost expected income as a result of Brimmo's waiver of claims. Having found that it is more likely than not that AVL and Ishvan committed fraud against Plaintiffs, and given that Ishvan moved funds to satisfy an out-of-state lien shortly after litigation commenced, I also find that there is a risk that Ishvan may seek to frustrate a judgment by hiding assets. I find it likely that Ishvan "lack[s] sufficient assets, or that [she] will choose to hide or otherwise dispose of [her] assets." *Plaintiff Funding Holding, Inc.*, 2017 WL 7411183 at *3 (citing *VisionChina Media*, 967 N.Y.S.2d at 347). There is, therefore, a real risk to future enforcement, justifying attachment.

*   *   *

Because all requirements of NY CPLR § 6212(a) have been met as to Ishvan, and there is a real risk of enforcement to a future judgment, I respectfully recommend that an order of prejudgment attachment be issued as to Ishvan's property. The requirements of NY CPLR § 6212(a) have not been met as to AVL, however, because Plaintiffs have failed to demonstrate a ground for attachment under CPLR ¶ 6201. Accordingly, I respectfully recommend that no order of attachment be issued against the property of AVL.

### III. Disclosure of Property and Debts Owed Pursuant to CPLR § 6220

After an order of attachment has been granted, "the court may order disclosure by any person of information regarding any property in which the defendant has an interest, or any debts owing to the defendant." CPLR § 6220.

Plaintiffs seek a disclosure of "the identity of all real property, bank accounts, brokerage accounts, accounts receivable, cash, stocks, bonds, motor vehicles, and boats in which [Ishvan and AVL] have any interest, as well as any debts owed" to Ishvan and AVL. (Motion at 2.) Because the

14

requirements for prejudgment attachment of Ishvan's property have been met, disclosure pursuant to CPLR § 6220 relating to the identity of Ishvan's property and debts is also warranted. I respectfully recommend that Ishvan, but not AVL, be ordered to disclose the identity of all property and any debts owed.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiffs' motion for an order of prejudgment attachment be granted as to Defendant Lilia Ishvan, but not AVL Capital, LLC. I further recommend that Ishvan be directed to disclose the identity of all real property, bank accounts, brokerage accounts, accounts receivable, cash, stocks, bonds, motor vehicles, and boats in which she has any interest, as well as any debts owed to her, in order to facilitate attachment, and that Plaintiff be directed to post an undertaking in the amount of $5,000 pursuant to CPLR § 6212(b) within fourteen days of adoption of this Report and Recommendation. *See Yong Xiong He v. China New Star Rest., Inc.*, No. 19-CV-5907 (PKC)(CLP), 2020 WL 6202423, at *16 (E.D.N.Y. Oct. 22, 2020) ("Courts frequently set the undertaking as a fraction of a percent of the value of the attachment") (collecting cases).

Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
July 24, 2023